1157

Patti HONEA, Respondent v. William Franklin PRIOR, M.D., Appellant.
(369 S. E. (2d) 846)

Court of Appeals

*Stephen K. Surasky* of *Bell & Surasky*, Langley; *James B. Richardson, Jr.* of *Richardson & Smith*, Columbia, *for appellant.*

*Kenneth M. Suggs* and *John Boswell* of *Suggs & Kelly*, and *James Edward Holler*, Columbia, *for respondent.*

Heard March 22, 1988.

Decided May 9, 1988.

GOOLSBY, Judge:

This case involves allegations of a sexual assault committed by a physician on a female patient. The jury awarded the patient, Patti Honea, $15,000 in actual damages and $80,000 in punitive damages. The physician, William Franklin Prior, M.D., appeals. The questions on appeal concern expert witnesses and the exclusion of certain testimony.

Honea's complaint alleges that on November 11, 1984, she went to Prior's office in Aiken County to obtain a prescription for birth control pills, that Prior required her to disrobe, that after she removed her clothing and lay down on the examining table Prior began caressing her breast, stomach, and vagina, that Prior then inserted his hand into her vagina, rubbed her very hard, and asked her if she enjoyed his actions, that she several times requested him to stop, that he unzipped his pants, that she began crying and demanded she be allowed to dress and leave the examining room, that Prior told her to follow him to his office to receive the birth control pills, that when he handed her the pills he pulled her onto his lap, and that she broke free and fled. Honea's complaint further alleges that Prior's actions caused her, among other things, to suffer emotional and psychological pain and trauma, to be hospitalized, to suffer physical pain and suffering, to lose wages, and to pay medical expenses. She sets forth causes of action for assault and battery, negligence, and outrage.

Prior's answer denies Honea's allegations.

An Aiken County jury, however, found Honea's allegations to be true.

I.

Prior contends the trial court erred in qualifying two social workers as expert witnesses to give opinion testimony concerning their diagnoses of Honea's psychiatric disorder.

On November 27, 1984, Honea's family doctor, Charles Hewitt, Jr., M.D., referred her to Deb Bennett for counseling in connection with an alleged sexual assault that Honea told him occurred some 16 days earlier when she went to see

Prior to get a prescription for birth control pills. Hewitt, who had wide experience in treating sexually-abused adults, worked with Bennett "for years," considered her "superbly trained and ... the person at the [Aiken-Barnwell]Mental Health Center who could most adequately handle a complicated situation ... in a therapeutic fashion."

Bennett received a bachelor's degree in psychology and a master's degree in clinical social work. Before coming to Aiken, Bennett underwent training in a sexuality program in Minneapolis and was responsible for supervising the rape crisis centers in that city.

Shortly after she arrived in Aiken, she participated in a three-day program for professionals concerned with victim of sexual assault.

At the time of trial, she had been employed by the Mental Health Center for four years and held the position of Adult Family Out-Patient Program Coordinator. She once served as coordinator of the family violence program at the Mental Health Center and trained therapists on its staff. She carried her own clinical load and supervised 60 other therapists.

Bennett had served as a consultant to the Department of Social Services and to a coalition that assists abused persons. She had "treated" over 100 victims of sexual assault and had testified in 30 or 40 cases involving sexual assault and family violence.

She testified that clinical social workers provide psychiatric diagnoses and that her bachelor's degree and her master's degree in social work "enables [her] to make psychiatric diagnoses." Bennett also testified that her psychiatric diagnoses are reviewed by a psychiatrist.

Bennett saw Honea four times between December 6, 1984, and February 12, 1985. She referred Honea to Patricia Feigley after Honea moved to Columbia.

Feigley received her undergraduate degree in sociology and her master's degree in social work with a mental health specialization.

Feigley worked at the Family Service Center in Columbia as a clinical social worker for approximately five years. At the time of trial, she engaged in private practice, did consulting work, and worked part-time at the Columbia Mental Health Center.

All total, Feigley had 11 years experience in treating and counseling patients, including sexual assault victime. She received training in and did staff development presentations on the subject of sexual assault.

Feigley considered herself "qualified and competent to make psychiatric diagnoses" because of her clinical training in a "psychiatric setting." Further, she had read widely regarding post-traumatic stress syndrome and had been involved in clinical environments where this diagnosis was commonly made.

Beginning on July 20, 1986, Feigley held ten sessions with Honea.

Prior objected to Bennett being qualified as an expert witness to offer a psychiatric diagnosis of Honea. He also objected, in a general way, to Feigley being "qualified as an expert." After cross-examining Feigley regarding her qualifications Prior moved, again in a general way, "to exclude her testimony as an expert." The trial judge qualified both social workers as expert witnesses.

The qualification of a witness as an expert is, as a general rule, a matter committed to the sound discretion of the trial judge. *Campbell v. Paschal*, 290 S. C. 1, 347 S. E. (2d) 892 (Ct. App. 1986). The trial judge's determination regarding a witness' qualifications to testify as an expert will not be disturbed on appeal, absent a showing of an abuse of discretion. *McCown v. Muldrow*, 91 S. C. 523, 74 S. E. 386 (1912).

To qualify as an expert, a person must have acquired by study or practical experience such special knowledge of the subject matter of his or her testimony as would enable the person to give guidance and assistance to the jury in solving a problem about which the jury's good judgment and average knowledge is inadequate. *Botehlo v. Bycura*, 282 S. C. 578, 320 S. E. (2d) 59 (Ct. App. 1984); *Allen v. State*, 365 So. (2d) 456 (Fla. Dist. Ct. App. 1978), *dismissed* 368 So. (2d) 1373 (1979). There is no exact requirement concerning how knowledge or skill must be acquired. *Hopkins v. Comer*, 240 N. C. 143, 81 S. E. (2d) 368 (1954). A witness may be competent to testify as an expert although the witness acquired his or her knowledge through practical experience and not by scientific study, training, or research. 31 Am. Jur. (2d) *Expert and Opinion Evidence* § 27 at 526 (1967). Even where the prob-

lem presented may be one that usually requires some scientific knowledge or training, a person with long experience may testify as an expert although he or she did not pursue a special study of the matter. *Id.* at 526-27.

With respect to the qualifications of an observing witness to give an expert opinion concerning a person's mental condition, it is not necessary that the witness be specially skilled in the subject of mental disorders or that the witness be a psychiatrist. 32 C. J. S. *Evidence* § 546(101) at 391-92 (1964); *cf. Botehlo v. Bycura,* 282 S. C. at 586, 320 S. E. (2d) at 64 ("[A]n expert is not limited to any class of persons acting professionally."). An observing witness as to mental condition, however, must have had "adequate opportunities for observation." 32 C. J. S., *supra* at 391.

Considering each social worker's education, her postgraduate training, her clinical experience with victims of sexual assault, and her opportunities to observe Honea, we hold the trial judge committed no abuse of discretion in determining that each social worker was qualified as an expert to give opinion evidence regarding Honea's mental condition. *See State v. Lawrence,* 112 Idaho 149, 730 P. (2d) 1069 (Ct. App. 1986) (the trial court did not abuse its discretion in admitting expert testimony by a social worker knowledgeable in the field of child sexual abuse where the expert offered no opinion as to whether the children involved had been abused); *Onwan v. Commonwealth,* 728 S.W. (2d) 536 (Ky. App. 1987) (wherein the court held a social worker qualified either as an expert or lay witness to give her opinion regarding whether a sexual abuse victim's upset behavior during her questioning of the victim was consistent with that of a sexually abused child and the social worker's testimony did not go to the ultimate issue of guilt or innocence); *Matter of Kimberly K.,* 123 A.D. (2d) 865, 507 N. Y. S. (2d) 654 (1986) (where the expert conclusion of a social worker that a child had been abused was used to corroborate out-of-court statements by the child that she had been sexually assaulted); *People v. Scala,* 128 Misc. (2d) 831, 836, 491 N. Y. S. (2d) 555, 560 (1985) ("Properly trained clinical social workers are manifestly competent to diagnose mental disorders.").

## II.

Prior charges the trial court with prejudicial error in admitting evidence of post-traumatic stress disorder to prove Honea was sexually assaulted.

Both Bennett and Feigley testified Honea suffered from post-traumatic stress disorder. This condition is a mental disorder triggered by a traumatic event authored either by natural causes or by human actions.

We need not reach the question of whether evidence of post-traumatic stress disorder is admissible in a civil case to prove that a sexual assault occurred in fact. *See State v. Hudnall*, 293 S. C. 97, 359 S. E. (2d) 59 (1987) (pediatrician's testimony regarding common characteristics exhibited by child victims of sexual abuse held inadmissible to show that the victim was in fact sexually abused). Although Prior appears to have objected to Bennett's being allowed to use symptoms and diagnosis of post-traumatic stress disorder to prove that Honea was sexually molested in fact, he voiced no objection to Feigley's being permitted so to do. Prior's objection to Feigley's testimony concerning Honea's symptoms and diagnosis related only to her qualifications to testify as an expert.

Any error committed by the trial court in allowing Bennett's testimony regarding Honea's suffering from post-traumatic stress disorder, therefore, was harmless since Feigley, without objection, gave similar, if not identical, testimony in this regard. *See Turner v. Wilson*, 227 S. C. 95, 86 S. E. (2d) 867 (1955) (any error in the admission of certain testimony was not prejudicial where similar testimony was received without objection).

## III.

Prior also contends the trial court committed reversible error in admitting evidence of post-traumatic stress disorder to bolster Honea's credibility.

We do not see, however, where Prior made this particular contention below, unless it is embraced by his objection to Bennett's being allowed to use evidence of symptoms exhibited by a person with post-traumatic stress disorder to prove that Honea was sexually molested in fact. Whatever the case regarding Bennett, Prior never contested the admission by

the trial court of similar evidence from Feigley on the ground that Honea offered the evidence only to bolster her credibility.

Indeed, the only exception that charges the trial court with error in allowing evidence to bolster Honea's credibility is Exception No. 9 which reads:

> 9. The circuit court erred in allowing the witness Bennett, a social worker, to testify as follows:
>
>> Q. Now, if [Honea] had made up the event, would she have displayed all those things [*i.e.*, symptoms]?
>> A. She could have displayed some of them. She could not have displayed all of them.
>
> This was error because the witness thereby was allowed to vouch for the credibility of the plaintiff in her account of "the event" which is the subject of this action.

An examination of the record reveals Prior made no specific objection to this question and answer. *See Lyons v. Butler*, 288 S. C. 498, 343 S. E. (2d) 630 (Ct. App. 1986) (a party must make a specific objection to the admission of evidence before the party can raise it on appeal). Moreover, the exception concerns only Bennett's testimony.

At any rate, any error committed by the trial court in admitting evidence from Bennett of post-traumatic stress disorder for the purpose of bolstering Honea's credibility, irrespective of whether the error was properly preserved, was harmless because Feigley, without objection, also provided evidence of post-traumatic stress disorder. *See Turner v. Wilson, supra; cf. State v. Hudnall*, 293 S. C. at 101, 359 S. E. (2d) at 62 (evidence admitted to bolster a child's testimony that a crime had in fact occurred was not harmless error "in view of paucity of evidence against appellant.").

## IV.

Prior next argues the trial court committed prejudicial error in not allowing Prior's proposed expert, John Burns, M.D., to testify concerning his diagnosis of Honea's psychiatric condition.

The trial court refused to qualify Burns, a resident in

psychiatry, as an expert to offer an opinion regarding psychiatric diagnoses and refused to allow him to testify concerning his evaluation of Honea's psychiatric condition because Burns had "[to] operate under supervision" and was "still in training."

Because Prior made no offer of proof, we do not know whether Burns' evaluation of Honea's psychiatric condition would have been favorable to Prior or not. Unless a party includes an offer of proof in the record, there is nothing for us to review. *Ward v. Epting*, 290 S. C. 547, 351 S. E. (2d) 867 (Ct. App. 1986).

We therefore do not reach the question of whether the trial court committed prejudicial error in refusing to allow Burns to testify as to his diagnosis of Honea's psychiatric condition.

## V.

Finally, Prior contends the trial court committed reversible error in excluding the testimony of the witness Sam Erb that Honea came into an Aiken bar owned by Erb and excitedly told him, "I'm here in town to go to court to get a lot of money."

In an effort to persuade the trial court to admit Erb's testimony, Prior argued the proffered evidence would refute Honea's claim that "thinking about this matter depresses her [and] causes her to cry" in that Erb's testimony would establish "that she [could] think about this case without getting depressed."

The admission or exclusion of evidence is addressed to the sound discretion of the trial court whose discretion will not be disturbed on appeal absent a showing of an abuse of discretion amounting to a manifest error of law and a showing of prejudice to the appellant's rights. *Grand Strand Construction Co., Inc., v. Graves*, 269 S. C. 594, 239 S. E. (2d) 81 (1977); *South Carolina State Highway Department v. Rural Land Co.*, 250 S. C. 12, 156 S. E. (2d) 333 (1967).

Assuming the trial court's exclusion of the proffered evidence constituted a manifest error of law, no prejudice resulted from its exclusion. Honea gave in-court testimony about the alleged incident in Prior's office and, in so doing, provided evidence to the jury of her emotional and mental

state when "thinking" about it; therefore, the error, if any, in excluding Erb's testimony was cured. *Cf. Tate v. Mauldin,* 157 S. C. 392, 154 S. E. 431 (1930) (error, if any, in excluding the defendant's opinion, as an expert bottler, that a mouse could not get into a softdrink bottle through a bottling machine was cured by a jury's inspection of the machinery); *Gamble-Skogmo, Inc. v. Federal Trade Commission,* 211 F. (2d) 106 (8th Cir. 1954) (an orally-testifying witness' appearance and demeanor are assumed to be in evidence); *Dyer v. MacDougall,* 201 F. (2d) 265 (2nd Cir. 1952) (a witness' demeanor is part of the evidence).

Affirmed.

CURETON, J., concurs.

SHAW, J., concurs in separate opinion.

SHAW, Judge (concurring):

I fully agree with the holding of the majority opinion. However, regarding Prior's claim that some evidence which possibly could have been favorable to him was denied, the trial judge allowed the testimony of Dr. Terence Lelane, a psychologist, who, after interviewing and testing Honea concluded she did not display post-traumatic stress disorder symptoms. This favored Prior. His testimony, combined with all other testimony gave the jury a fair presentation of the allegations of both sides. The jury found credibility in Honea's witnesses. Therefore, if the testimony of Dr. Burns would have been allowed and would have been favorable to Prior, it would have been merely cumulative. This further strengthens the ruling of the trial judge.

## ORDER ON PETITION FOR REHEARING

GOOLSBY, Judge:

This matter is before the court on a petition for rehearing filed by the appellant William Franklin Prior, M.D. After careful consideration of the petition, we are unable to discover any material fact or principle of law that we overlooked or disregarded in affirming the judgment below. One of the two grounds on which Prior bases his petition warrants additional comment.

Prior questions the "soundness" of our decision in upholding the exercise of discretion by the trial court in qualifying two social workers as expert witnesses to give opinion testimony concerning their diagnoses of Honea's psychiatric disorder, a position which Prior charges is "virtually unsupported in other jurisdictions." He particularly complains of our use of *People v. Scala*, 128 Misc. (2d) 831, 491 N. Y. S. (2d) 555 (1985), as supporting authority. He contends this "mere trial court decision in New York ... strongly appears to be 'out of step' with the controlling authority in that jurisdiction of *People v. Diaz*, 51 N. Y. (2d) 841, 433 N. Y. S. (2d) 751, 413 N.E. (2d) 1166 (1980)."

Irrespective of whether *Scala* is "out of step" with *Diaz* or not, our decision in the instant case is in full accord with *Diaz*.

In a memorandum opinion, the Court of Appeals of New York stated, "The trial court's refusal to permit defendant to offer certain testimony of a psychologist concerning defendant's mental condition was a *matter within the court's discretion.*" 51 N. Y. (2d) at 842, 433 N. Y. S. (2d) at 752, 413 N.E. (2d) at 1166, [Emphasis ours.] In holding "[i]t was not error ... for the trial court to refuse to permit testimony regarding the interpretation of [psychological] tests as they applied to this defendant's mental condition, since the witness' expertise in interpretations of this nature had not been satisfactorily established," the court expressly limited its holding to the case before it. *Viz.*:

> This is not to say that only a psychiatrist may testify in this regard. Rather, we merely hold that, under the circumstances present in this case, the Trial Judge did not abuse his discretion by refusing to permit the challenged testimony. Absent a finding by this court that the Trial Judge erred as a matter of law, a finding which we may not make in this case, there should be an affirmance.

51 N. Y. (2d) at 842-43, 433 N. Y. S. (2d) at 752, 413 N. E. (2d) at 1166-67.

Two judges dissented in *Diaz*. They viewed the trial judge as having committed an abuse of discretion in not allowing the psychologist, who had a bachelor of arts degree in psy-

chology and 27 years experience in the area of psychological testing, to testify concerning whether the defendant suffered from extreme emotional disturbance at the time he killed his paramour. As they read the record, the trial judge improperly predicated his ruling on the ground, "repeated several times in the course of the direct examination of the psychologist, that the witness was not a psychiatrist and that the opinion sought could only be given by a psychiatrist." 51 N. Y. (2d) at 843, 433 N. Y. S. (2d) at 752, 413 N.E. (2d) at 1167.

Here, we have held, like the New York Court of Appeals did in *Diaz*, simply that the trial court did not abuse its discretion under the circumstances. The only difference between the two cases, as we view them, is that in *Diaz* the trial court, in the exercise of discretion, disallowed the testimony in question while in the instant case the trial court, in the exercise of discretion, allowed it.

We do not agree, moreover, that *Scala* is "out of step" with *Diaz*. The trial court in *Scala* held that "[p]roperly trained clinical social workers are manifestly competent to diagnose mental disorders" and, in reaching this decision, expressly noted the Court of Appeals' acknowledgement in *Diaz* that someone other than a psychiatrist may testify regarding a person's mental condition.

In our decision, we also have acknowledged that one other than a psychiatrist may give an expert opinion concerning a person's mental condition. *See Commonwealth v. Gallagher*, 353 Pa. Super. 426, 510 A. (2d) 735 (1986) (wherein the court upheld the trial court's admission of expert testimony on rape trauma syndrome from a witness who did not have a medical degree and listed cases supporting its conclusion that an expert witness need not hold a medical degree in order to testify that a complainant exhibits symptoms of rape trauma syndrome).

Accordingly, the petition for rehearing is

Denied.

Shaw and Cureton, JJ., concur.